# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

IN RE: COUNTRYWIDE FINANCIAL CORP.          CASE NO: 3:08-MD-01998
CUSTOMER DATA SECURITY BREACH          MDL No. 1998
LITIGATION
_____

This document relates to:

ALL ACTIONS

## MEMORANDUM OPINION

This matter is before the Court upon Representative Plaintiffs' Motion for and

Memorandum in Support of Final Approval of Class Action Settlement, and Award of

Attorneys' Fees, Costs and Expenses, and Incentive Awards (Docket #236).  The Court held a

final fairness hearing in this matter on July 19, 2010.  This matter is now ripe for adjudication.

For the following reasons, Representative Plaintiffs' Motion is GRANTED.

## BACKGROUND

On January 21, 2009, Plaintiffs Thomas A. Munz, Scott Gregg, Matthew B. Martin,

Edmond Moses, Harold L. Mooney, Laila Elkhettab, Jay Gaumer, and Kim Wickman filed a

Motion for Settlement, which requested class certification, preliminary approval of the

settlement and notice plan, and the setting of a final fairness hearing.  The Proposed Settlement

resulted in objections filed by the Holmes Plaintiffs, the Martin Plaintiffs, and the

Weber/Silverbach Plaintiffs.

The Court issued an Order on the Settling Plaintiffs' Motion on June 30, 2009.  That

Order expressed that the Court was prepared to grant preliminary approval of the settlement with

regard to the 2.4 million proposed class members who received a letter from Countrywide

concerning the data breach, but the proposed notice plan was inadequate for the remaining class

members since it did not satisfy the requirement of Federal Rule of Civil Procedure 23(c)(2)(B) that individual notice be given "to all members who can be identified through reasonable means."

Settling Parties filed a Second Amendment to the Settlement Agreement on July 24, 2009. This amendment set forth a Revised Proposed Notice Plan, which replaced the previously-filed and inadequate Proposed Notice Plan. The Holmes and Martin Plaintiffs filed objections to the new Plan. Settling Parties also filed a Third Amendment to the Settlement agreement on September 4, 2009, which amended the definition of the Settlement Class. The Court reviewed the amendments and granted preliminary approval of the settlement. The Court further approved the revised notice plan and appointed Ben Barnow, Barnow and Associates, P.C., and Burton H. Finkelstein, Finkelstein Thompson LLP, as co-lead class counsel.

Representative Plaintiffs have now filed a motion for final approval of the class action settlement and for attorneys' fees, costs, expenses, and incentive awards. The Court held a final fairness hearing on July 19, 2010. Eighty-nine objections were filed with the Court. The Court reviewed those objections and invited all persons present at the final fairness hearing to comment or object. The Court heard from five objectors and one witness. The Court is now prepared to issue its final decision on the class action settlement in this case.

## DISCUSSION

## I.      Defendant Provided Proper Notice

Following preliminary approval, Hilsoft Notifications (the Court-appointed Notice Specialist) complied with the Court's Order approving the revised notice plan by mailing and publishing notice in the form and manner approved by this Court. The settlement documents

were also made available via a website, and a toll-free number was established to address class members' questions.  As reported by Countrywide's counsel at the final fairness hearing, the notice plan has resulted in approximately 630,000 visitors to the class action website, 500,000 callers to the toll-free number, and 500,000 requests for the detailed notice.  Hilsoft Notifications states that the notice plan "reached at least 80% of potential Settlement Class Members an estimated 1.6 times . . . ."  Aff. of Cameron R. Azari, Esq., Docket #231, p. 4.  The Court holds that the notice process was adequate and consistent with Federal Rule of Civil Procedure 23 and the standards of due process.

Countrywide has also properly complied with the Class Action Fairness Act ("CAFA"), which "requires each defendant provide notice of a proposed class action settlement to 'appropriate' federal and state officials.'" *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 526 (E.D. Ky. 2010) (citing 28 U.S.C. § 1715).  Countrywide mailed CAFA notice packets to 60 federal and state officials, "including the Attorney General of the United States, officials at the Office of the Comptroller of the Currency, Office of Thrift Supervision and Federal Reserve Board, and the Attorneys General of each of the 50 states and the District of Columbia."  Aff. of Azari, Docket #231, p. 6.  None of these government entities have filed an objection to the settlement.

## II.    Final Approval of the Settlement

The Court may approve a settlement that would bind class members only after a hearing and a determination that the settlement is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(2).  The United States Court of Appeals for the Sixth Circuit has held the following seven factors should "guide the inquiry":

(1)    the risk of fraud or collusion;
(2)    the complexity, expense and likely duration of the litigation;
(3)    the amount of discovery engaged in by the parties;
(4)    the likelihood of success on the merits;
(5)    the opinions of class counsel and class representatives;
(6)    the reaction of absent class members; and
(7)    the public interest.

*Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of America v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (internal citations omitted).  No one of these factors is dispositive.  Rather, all are to be weighed and considered in light of the particular demands of the case.  *See, e.g.*, *Grenada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992).  Federal policy favors class action settlement.  *Int'l Union*, 497 F.3d at 632.  In fact, "[o]nce preliminary approval has been granted, a class action settlement is presumptively reasonable, and an objecting class member must overcome a heavy burden to prove that the settlement is unreasonable."  *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 550 (S.D. Ohio 2000) (citing *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983); *Bronson v. Bd. of Educ. of City School Dist. of Cincinnati*, 604 F. Supp. 68, 71 (S.D. Ohio 1984)).

   A.    *The Risk of Fraud or Collusion*

   "'Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary.'"  *Thacker*, 695 F. Supp. 2d at 531 (quoting *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008)).  The Court discussed the risk of fraud or collusion briefly in its preliminary approval of the settlement, finding:

   The Court does not find fraud or collusion in the present case.  Countrywide and
   Settling Plaintiffs' attorneys acknowledge months of arm's length negotiations.
   There is no evidence of fraud.  The fact that Settling Parties filed a settlement
   agreement shortly after transfer to this Court is not necessarily proof of collusion.
   "The timing of a settlement by itself does not establish collusion."  *Int'l Union,*
   *United Auto., Aerospace, and Agr. Implement Workers of America v. General*

*Motors Corp.*, 497 F.3d 615, 633 (6th Cir. 2007).

Mem. Op. & Order, Docket #111, p. 18.  The Court went on to discuss the issue of disproportionate attorneys' fees as evidence of collusion, finding that $3.5 million in attorneys' fees is reasonable under the circumstances and does not demonstrate collusion.  *Id.* at 20. Attorneys' fees are discussed in more detail *infra*.

Since preliminary approval, objectors have presented the following as evidence of fraud or collusion: the lack of due process in providing notice, the disparate benefits negotiated for class members, and the fact that counsel first spoke of this settlement in the context of another lawsuit.  The Court notes that it approved the amended notice process and found it satisfied the requirements of due process in its Order granting preliminary approval.  *See* Mem. Op. & Order, Docket # 111, p. 20-24.  Therefore, the Court will not address any objections relating to notice.

Nor does the Court believe the remaining objections have any merit.  As Countrywide's counsel pointed out at the final fairness hearing, prohibiting attorneys working on the same case from speaking to each other of other pending matters would be inefficient and illogical.  The fact that the settlement process began in this context is not a rarity, nor evidence of collusion.

The disparate benefits received by class members also does not present evidence of collusion.  Objector Privacy Rights Clearinghouse alleges that the disparate benefits is evidence that counsel for the Settling Plaintiffs' failed to pursue appropriate relief for all settlement class members.  The Court has previously addressed this issue:

> The differential treatment of those who received letters and those who did not is not undue.  The Court believes that enough proof has been presented to assert that those who received letters initially have a higher probability of being at risk of identity theft due to the Rebollo incident.

Mem. Op. & Order, Docket #111, p. 16.  The Court fails to see how reasonable differential

5

treatment among class members, obtained through months of arm's length negotiations, amounts to collusion or fraud. Accordingly, the Court finds no evidence of collusion or fraud, and this factor weighs in favor of finding the settlement agreement to be fair, reasonable, and adequate.

   B.  *The Complexity, Expense, and Likely Duration of the Litigation*

  "In evaluating a proposed class settlement, the Court must also weigh the risks, expense and delay the plaintiffs would face if they continued to prosecute the litigation through trial and appeal." *Thacker*, 695 F. Supp. 2d at 531(citations omitted). The Court weighs these factors against the recovery provided by the settlement. *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003).

  Several factors weigh in favor of settlement: the relatively novel legal issues relating to identity theft, the time sensitive nature of the litigation, the continued fees and costs associated with ongoing litigation, the large class size and potential class certification problems, the likelihood of appeals, and the lengthy duration of litigation, as evidenced by the extensive motion practice engaged in by the parties up to this point.

  The risk to the plaintiff class in proceeding with litigation also weighs in favor of settlement. Beyond the novel state of the law in regards to identity theft, there are inherent issues of causation, and a very real possibility that this lawsuit is premature. Statutory damages under the Fair Credit Reporting Act ("FCRA") are guaranteed only if the plaintiff class can show willful failure to comply on the part of Countrywide; to recover for negligent noncompliance, class members must be able to show actual damages. *See* 15 U.S.C. §§ 1681n(a)(1)(A), 1681o(a)(1). Based upon the Court's reading of the member cases and filed objections, there appear to be very few class members who have suffered any actual damages at this time.

Even if litigation is successful for the plaintiff class, appeals are likely to delay any sort of meaningful relief. In contrast, the settlement provides recovery without delay. For all of the above reasons, the Court finds that this factor weighs heavily in favor of settlement.

C.    *The Amount of Discovery Engaged in by the Parties*

The parties have disputed the issue of discovery at length. The objectors note that the settling parties engaged in no confirmatory discovery prior to tendering the settlement agreement. Nor do the objectors believe the confirmatory discovery produced by Countrywide after settlement negotiations was sufficient. The Court addressed the issue of discovery in its preliminary approval of the settlement:

> The Court also finds the Martin and Holmes Plaintiffs' objections to the lack of pre-settlement discovery unavailing. "[F]ormal discovery is not necessary as long as (1) the interests of the class are not prejudiced by the settlement negotiations and (2) there are substantial factual bases on which to premise settlement." *Newby v. Enron Corp.*, 394 F.3d 296, 306 (5th Cir. 2004). Settling Plaintiffs and Countrywide have represented that they engaged in months of arm's length negotiations, the likelihood of success through litigation is questionable for the Plaintiffs, and expediency is beneficial in cases of identity theft. Moreover, Settling Plaintiffs' counsel has experience in this area of the law, as well as in settling class actions of this sort. "Giving substantial weight to the recommendations of experienced attorneys, who have engaged in arms-length settlement negotiations, is appropriate, although the ultimate decision . . . is left to the Court." *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 341 (E.D. Pa. 2007). Mr. Barnow brought his expertise, along with his clients' information, to the negotiations table. He also had knowledge of Rebollo's indictment and the surrounding circumstances. Settling Plaintiffs later received approximately 6,000 pages of confirmatory discovery after filing the settlement agreement. The Court believes there were enough factual bases, absent formal pre-settlement discovery, on which to premise the settlement.

Mem. Op. & Order, Docket #111, p. 20. The objectors have not presented any new arguments to persuade the Court to abandon its position in regard to pre-settlement discovery.

The objectors have, however, offered new arguments concerning the 6,000 pages of confirmatory discovery produced by Countrywide. First, the objectors argue that more confirmatory discovery is necessary to determine why Countrywide did not award relief to those who filed complaints after the initial letter was sent out in 2008 (prior to this litigation). Further, 75-80 additional "persons of interest" to the FBI that were discovered during Countrywide's internal investigation. The objectors want more discovery to delve into who these people are and how they were associated with the Rebollo data theft. Objectors also note that the confirmatory discovery fails to detail the steps Countrywide has taken to prevent future breaches. The objectors cite to additional breaches that occurred prior to and after the Rebollo theft.

Beyond the 6,000 pages of confirmatory discovery, the parties also engaged in nearly eleven hours of deposition testimony. Plaintiffs' counsel deposed Craig Froelich, Senior Vice President, Technology Security at Countrywide at the time of the Rebollo incident, and Christopher Higgins, Chief Information Security Officer at Bank of America. These proceedings were made available to additional plaintiffs' counsel, and there is evidence that counsel for the Martin and Holmes plaintiffs were present at these depositions and permitted to examine the witnesses. Countrywide argues that the objectors were free to ask the questions they now pose to the Court during those depositions. The Holmes Plaintiffs believe the policies and procedures detailed by the two deponents should be independently reviewed by an outside expert.

"While objectors are entitled to 'meaningful participation' in the settlement proceedings, . . . . and 'leave to be heard,' . . . they are not automatically entitled to discovery or 'to question and debate every provision of the proposed compromise.'" *In re Gen. Tire and Rubber Co. Securities Litig.*, 726 F.2d 1075, 1084 n. 6 (6th Cir. 1984) (citations omitted). "A district court,

moreover, need grant objectors discovery only if they can make a colorable claim that the settlement should not be approved." *Int'l Union*, 497 F.3d at 635 (citing *Geier v. Alexander*, 801 F.2d 799, 809 (6th Cir. 1986)). The Court has reviewed voluminous amounts of motions and objections throughout the course of this litigation, and believes the objectors have failed to present a colorable claim for granting additional discovery.

     D.     *The Likelihood of Success on the Merits*

The Court must also weigh the likelihood of success on the merits in considering the whether the settlement is fair, reasonable, and adequate. As the Sixth Circuit noted:

> The fairness of each settlement turns in large part on the bona fides of the parties' legal dispute. Although this inquiry understandably does not require us to 'decide the merits of the case or resolve unsettled legal questions,' we cannot 'judge the fairness of a proposed compromise' without 'weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement.' *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n. 14, 101 S. Ct. 993, 67 L. Ed. 2d 59 (1981); *see In re Gen. Tire & Rubber*, 726 F.2d at 1086.

*Int'l Union*, 497 F.3d at 631. As the Court emphasized in its preliminary approval, Plaintiffs' case faces serious challenges that may prevent any recovery were this case to proceed as a class action litigation. *See* Mem. Op. & Order, Docket #111, p. 17. Perhaps Plaintiffs' two biggest challenges are the issues of causation and damages, both of which are essential to maintaining a successful case. Moreover, the current state of the law in regards to data breaches does not bode well for Plaintiffs. For these reasons, the Court believes this factor weighs heavily in favor of settlement.

Countrywide's brief in response to the objections filed in this case cites several data breach cases that were unsuccessful. For instance, in *Amburgy v. Express Scripts, Inc.*, the district court held that injury-in-fact was not demonstrated by a mere possibility of future

identity theft, and therefore the named plaintiff lacked standing. 671 F. Supp. 2d 1046, 1050 (E.D. Mo. 2009); *see also Hammond v. The Bank of New York Mellon Corp.*, No. 08 Civ. 6060(RMB) (RLE), 2010 WL 2643307, at *7 (S.D.N.Y. June 25, 2010) ("The Court concludes that Plaintiffs lack standing because their claims are future-oriented, hypothetical, and conjectural. There is no 'case or controversy.'"). Other courts have held that while a plaintiff may have standing, claims for fear of future identity theft must be dismissed for lack of actual damages. *See, e.g.*, *Ruiz v. Gap, Inc.*, 622 F. Supp. 2d 908, 918 (N.D. Cal. 2009); *McLoughlin v. People's United Bank, Inc.*, No. 3:08-cv-00944(VLB), 2009 WL 2843269, at *8 (D. Conn. Aug. 31, 2009). The Southern District of New York analyzed the plethora of case law on this very issue, finding:

> While there is a split in authority as to how to analyze these cases, every court to do so has ultimately dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure . . . or under Rule 56 following the submission of a motion for summary judgment. Several courts . . . have determined that the potential risk of identity theft resulting from the loss of personal information is not an 'injury-in-fact' within the meaning of Article III of the United States Constitution and have dismissed these cases after concluding that plaintiffs lacked 'standing.' . . . Other courts have determined that similarly situated plaintiffs had standing but concluded, for one reason or another, that loss of identity theft is not a legally cognizable claim.

*Hammond*, 2010 WL 2643307 at *1 (citations omitted). The Court believes this established line of precedent suggests that proceeding through the litigation process in this case is unlikely to produce the plaintiffs' desired results. In contrast, the settlement offers a reasonable resolution that properly addresses the tricky issues presented by data breaches.

Accordingly, this factor weighs in favor of final approval of the settlement.

E.       *The Opinions of Class Counsel and Class Representatives*

"In deciding whether a proposed settlement warrants approval, the informed and

reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference." *Thacker*, 695 F. Supp. 2d at 532. Class counsel in this case are experienced in the area of class actions and theft of private information. These attorneys have taken time to conduct arm's length negotiations and confirmatory discovery in order to assess the merits of the settlement. Class counsel have stated that they believe the settlement provides substantial relief and benefits to the settlement class in light of the risks involved in continuing this litigation. Class counsel also note that the settlement is endorsed by the Representative Plaintiffs, forty-eight law firms, and fifty-eight named plaintiffs. The Court finds that this factor weighs in favor of approving the proposed settlement.

### F. *The Reaction of Absent Class Members*

"A certain number of opt-outs and objections are to be expected in a class action. . . . If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *In re Cardizem*, 218 F.R.D. at 527. Class counsel notes that of the approximately 17 million class members, only 2,943 opt-outs and 89 objections were received. The Court has addressed some of the objections *supra*, and the remaining objections the Court finds to be without merit.

First, a majority of objectors seek some additional recovery not provided for in the settlement, such as credit monitoring for a period longer than two years, additional compensation for out-of-pocket expenses, no expiration date for recovery, or a standard monetary award to all class members. "A settlement will not be rejected solely because it does not provide a complete victory to the plaintiffs." *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996) (citing *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985)). "[T]he parties to a settlement

will not be heard to complain that the relief afforded is substantially less than what they would have received . . . ." *Hiram Walker*, 768 F.2d at 889; *accord Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."). Accordingly, these objections are without merit.

Other objections address personal issues the objectors have with Countrywide or Bank of America, generally involving their mortgages. Although the Court is sympathetic towards these objectors, their claims are not proper for this forum. This lawsuit involves only the alleged theft of personal information; it does not concern Bank of America or Countrywide's mortgage practices. Moreover, "'[o]bjections based purely upon individual claims of loss do not warrant disapproval of the proposed settlement.'" *Thacker*, 695 F. Supp. 2d at 528 (quoting *EEOC v. McDonnell Douglas Corp.*, 894 F. Supp. 1329, 1335 (E.D. Mo. 1995)).

Some objectors appear not to understand the settlement and its terms, or that the alternative is complex litigation. Many objectors expressed concern that this settlement would relieve Countrywide of liability for future data breaches. This is not the case. The Court's preliminary approval opinion identified the proper scope of the settlement. Although the settlement release's coverage is broader than the Rebollo incident, it only covers stolen private information prior to July 1, 2008. If a breach occurred after July 1, 2008, or a new breach occurs in the future, Countrywide and Bank of America are vulnerable to additional litigation. Obviously, a failure to understand the settlement agreement is not a valid objection.

Richard Goldman objects to the settlement because it fails to provide him the opportunity to obtain a new identity and social security number. Mr. Goldman insists that his circumstances

are unique in that he is the only two-time victim of identity theft and requires a new social security number for the second time.  Mr. Goldman obtained relief after his first instance of identity theft through legislative means.  While the Court is sympathetic to Mr. Goldman's circumstances, it believes a legislative remedy presents a more appropriate forum for Mr. Goldman to seek relief, rather than as part of this class action settlement.  Mr. Goldman is certainly free to avail himself of the benefits of this settlement, but the Court is restrained from assisting Mr. Goldman in obtaining a new social security number or identity.

Finally, some objectors voiced dissatisfaction with the amount of attorneys' fees to be awarded.  These objections are taken up in the section addressing the motion for attorneys's fees, costs, and incentive awards *infra*.

G.      *The Public Interest*

The Court finds that the settlement serves the public interest.  "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources."  *In re Cardizem*, 218 F.R.D. at 530 (quoting *Granada Inv., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)); *accord Ehrheart v. Verizon Wireless*, No. 08-4323, 2010 WL 2365867, at *3 (3d Cir. June 15, 2010) ("Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts.").  Further, the public has a great interest in the privacy of their personal information.  This settlement provides safeguards that would not otherwise be available to millions of people, at a time when such measures are needed most.

In conclusion, the Court's analysis of these seven factors demonstrates that the settlement

should be approved as fair, reasonable, and adequate.

### III. Attorneys' Fees, Costs, Expenses, and Incentive Awards

Having determined that final approval of the Settlement Agreement is warranted, the Court now turns to the issue of attorneys' fees, costs, expenses, and incentive awards. Co-Lead Settlement Class Counsel request $3.5 million in attorneys' fees and costs and expenses not to exceed $125,000.00. The incentive awards requested include $500.00 per Representative Plaintiff and $250 per Named Plaintiff. Countrywide has agreed to pay these amounts, to be distributed separately from settlement funds. Several objectors believe the award of $3.5 million in attorneys' fees is too high in comparison to the amount of recovery under the settlement.

In addressing the issue of attorneys' fees in a class action case, the Court must first determine if the lodestar or percentage approach is more appropriate. *See, e.g.*, *In re Cardinal Health Inc. v. Sec. Litig.*, 528 F. Supp. 2d 752, 760 (S.D. Ohio 2007). The Court also considers six factors (collectively referred to as the *Ramey* factors): "'(1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.'" *Moulton v. United States Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) (quoting *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996)); *see also Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974), *cert. denied*, 422 U.S. 1048 (1975). An award of attorneys' fees must be "'reasonable under the circumstances.'" *Id.* (quoting *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)).

*The Lodestar Approach Versus the Percentage Approach*

Settlement Class Counsel urge the Court to adopt the percentage approach to calculate attorneys' fees and determine the reasonableness of the fee. With either method, the goal is to make sure that counsel are fairly compensated. "The lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved." *Rawlings*, 9 F.3d at 516. In this matter, as this is not a typical "common fund" situation, the Court finds that $3.5 million is reasonable under the percentage of the fund method. The Court explained its reasoning in the preliminary approval opinion:

> The attorneys' fees sought are consistent with typical payout amounts for class action settlements. Settling Plaintiffs plan to seek $3.5 million in attorneys' fees, which are distributed separately from the funds dedicated to the class. The Court acknowledges that this number is high, especially in comparison to the capped funds available to the class members. In fact, $3.5 million is more than 50% of the available $6.5 million set aside for class members. However, the Court must also factor in the additional consideration Countrywide has given. For instance, Countrywide argues that it must pay for the credit monitoring package for each class member of the 2.4 million who opts to receive it. Although it is true that Countrywide once made substantially the same offer to the same 2.4 million people, the Court acknowledges that Countrywide is under no duty to make this offer again to those who originally refused it. The cost of providing the credit monitoring service could be small or great, depending on acceptance rates. Approximately 20% of the 2.4 million accepted Countrywide's first offer of free credit monitoring. If another 10% accept the second time around (which the Court does not believe is an unreasonable estimate), at a cost to Countrywide of $37 per person, Countrywide could potentially pay an additional $7 million. Adding the $6.5 million fund for class members and the potential costs of $7 million for the credit monitoring package offer, plus the $3.5 million for attorneys' fees, the monetary amount for attorneys' fees is about 20% of that total. The Martin Plaintiffs acknowledged at the preliminary approval hearing that the benchmark in class actions is 25%. This is generally true in cases of a common fund, where the attorneys' fees are taken out of that fund. *See, e.g.*, *Fournier v. PFS Investments, Inc.*, 997 F. Supp. 828, 832 (E.D. Mich. 1998) ("The 'benchmark' percentage for this standard has been 25% [of the common fund], with the ordinary range for attorney's fees between 20-30%."). The award of attorneys's fees in this case does not diminish the settlement class recovery, which provides a greater benefit to the class.

Mem. Op. & Order, Docket #111, p. 19.

Settlement Class Counsel believe a cross-check under the lodestar method also demonstrates the reasonableness of the requested fees. Co-Lead Settlement Class Counsel, Liaison Counsel, and the Executive Committee expended 11,453 hours working on this matter, equaling out to a lodestar amount of approximately $2.9 million. To equal the $3.5 million requested, the Court would have to apply a 1.20 multiplier to the $2.9 million figure. The Court examines the cross-check method in more detail under the second factor *infra*.

B.       *The Six Ramey Factors*

The Court must also find that the $3.5 million figure is reasonable by analyzing the six factors set out above. District courts in this circuit generally consider the most important factors to be the value of the benefit rendered and the value of the services on an hourly basis. *In re Sulzer Hip Prosthesis and Knee Prothesis Liab. Litig.*, 268 F. Supp. 2d 907, 930 (N.D. Ohio 2003) (citing *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1280 (S.D. Ohio 1996)).

1.       The Value of the Benefit Rendered to the Plaintiff Class

Because this case does not present a common fund settlement in the traditional sense, Class Counsel urge us to consider the total value of the benefits rendered to the class, including those which are not easily quantified. This case presents several difficulties in evaluating the value of the benefit rendered in that the extent of damage to the class is relatively unknown, the likelihood of success on the merits is in question, and the issues presented are novel. Accordingly, it is difficult to evaluate the value of the settlement in comparison to what might have been recovered had Plaintiffs been successful in litigation. However, in light of the Court's analysis as to the merits of this case and the risks associated with continued litigation, the Court

finds the value of this settlement is substantial.  Free credit monitoring, identity theft insurance

coverage, reimbursement for out-of-pocket expenses, free dispute resolution, and the $5 million

settlement fund provide a wide range of benefits for class members in a timely fashion.

Moreover, attorneys' fees, costs, expenses, and incentive awards do not diminish any class

recovery, which is an additional value to the class.  In sum, the Court finds that this factor

supports the reasonableness of the $3.5 million in attorneys' fees.

2.     The Value of the Services on an Hourly Basis

Co-Lead Settlement Class Counsel assert that Plaintiffs' counsel have expended more

than 11,000 hours on this matter, including substantial motion practice, confirmatory discovery,

hearings, phone calls, and months of negotiations.  The Court believes a lodestar cross-check

demonstrates the reasonableness of the requested fee.  The Sixth Circuit has approved a district

court's use of a lodestar cross-check in prior cases.  *See Bowling*, 102 F.3d at 780.

"To determine the 'lodestar' figure, the Court multiplies the proven number of hours

reasonably expended on the litigation by a reasonable hourly rate."  *Lonardo v. Travelers Indem.*

*Co.*, No. 1:06-CV-962, 2010 WL 1416698, *18 (N.D. Ohio Mar. 31, 2010) (citations omitted).

This figure may be adjusted according to a multiplier, which is to be decided on a case-by-case

basis.  *See id.*  Co-Lead Settlement Class Counsel assert that the lodestar in this case is about

$2.9 million, which results in a multiplier of 1.20 to reach the requested $3.5 million figure.

Counsel's motion asserts that the multiplier is reasonable and will actually decrease as a result of

time spent on the final fairness hearing and further work occurring before the Effective Date of

the settlement.

The Court finds that a multiplier of 1.20 is reasonable in light of the complexity of this

case, the novel legal issues, and the recovery achieved for the class. The Eastern District of Michigan held that 1.20 was a reasonable multiplier as it was "well within the range of multipliers awarded by courts in complex cases . . . ." *In re Cardizem*, 218 F.R.D. at 533. Citing a district court's wide discretion in awarding attorneys' fees, the Sixth Circuit approved a multiplier of 1.75 in a case which presented novel and difficult questions. *See Barnes v. City of Cincinnati*, 401 F.3d 729, 746 (6th Cir. 2005). Accordingly, the Court believes a lodestar cross-check supports the reasonableness of the $3.5 million award of attorneys' fees.

3.      Whether the Services Were Undertaken on a Contingent Fee Basis

According to Settlement Class Counsel, this case was undertaken on a purely contingent fee basis. "[C]ontingency fee arrangements indicate that there is a certain degree of risk in obtaining a recovery." *In re Telectronics Pacing Systems, Inc.*, 137 F. Supp. 2d 1029, 1043 (S.D. Ohio 2001). Class counsel spent considerable time on this case at the risk of receiving no compensation. Therefore, this factor supports the reasonableness of the requested attorneys' fees.

4.      Society's Stake in Rewarding Attorneys Who Produce Such Benefits in Order to Maintain an Incentive to Others

"Encouraging qualified counsel to bring inherently difficult and risky but beneficial class actions . . . benefits society." *In re Cardizem*, 218 F.R.D. at 534. Many of the class members in this case are financially unable to pursue an action such as this on their own. That individual plaintiffs may only receive a small recovery also hinders individual efforts. Although a few class members may have claims for larger recoveries, the harsh truth is that a majority of the class would have received nothing had this settlement not been reached. "Thus, attorneys who

take on class action matters enabling litigants to pool their claims provide a huge service to the judicial process" and should be rewarded for their efforts. *In re Rio Hair Naturalizer Prods. Liab. Litig.*, No. MDL 1055, 1996 WL 780512, at *17 (E.D. Mich. Dec. 20, 1996). The Court finds this factor is satisfied and supports the award of attorneys' fees.

       5.     The Complexity of the Litigation

The Court has addressed this factor several times in its discussion approving the settlement. This case presents novel challenges and difficult issues concerning damages and causation. Further, the size of the class presents additional problems. Accordingly, this factor supports the reasonableness of class counsel's requested fees.

       6.     The Professional Skill and Standing of Counsel Involved on Both Sides

As evidenced by the motion practice in this case and prior experience in other class action litigation, it appears to the Court that counsel for both sides are skilled attorneys who brought extensive experience and knowledge to the bargaining table. Co-Lead Settlement Counsel are nationally recognized in the field of class actions, particularly those involving security breaches. Countrywide is represented by Reed Smith, a prestigious and highly respected international law firm. "The ability of Co-Lead Counsel to negotiate a favorable settlement in the face of formidable legal opposition further evidences the reasonableness of the fee award requested." *In re Delphi Corp. Securities, Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 504 (E.D. Mich. 2008). Moreover, the Court was impressed with Co-Lead Counsel and Countrywide counsels' knowledge and skill, as represented in the various motions and hearings that took place throughout this settlement process.

    C.    *Costs and Expenses*

"As with attorneys fees, an award of costs and expenses, is also a matter left to the discretion of the trial court." *In re Rio Hair*, 1996 WL 780512 at *19. "[C]lass counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and consultants, travel and other litigation-related expenses." *In re Cardizem*, 218 F.R.D. at 535. Co-Lead Settlement Counsel request $125,000 in costs and expenses. Although counsel admits their actual expenses as of August 13, 2010, were only $95,013.17, counsel anticipates further costs occurring prior to the Effective Date of the settlement. Countrywide has agreed to pay up to $125,000 in costs and expenses.

The Court has reviewed detailed reports of costs and expenses from Co-Lead Settlement Class Counsel, Plaintiffs' Executive Committee, and other Plaintiffs' Counsel. These reports include claims for filing fees, computer research, delivery charges, copies, travel, facsimile, postage, and other miscellaneous costs. The Court finds that the $95,013.17 figure is a reasonable recovery of costs as documented. Although Co-Lead Settlement Counsel anticipates future costs and expenses due to the appeals process, the Court fails to see how nearly $30,000 in costs and expenses will be necessary. The $95,013.17 figure includes costs and expenses spanning nearly two years from 38 law firms. An additional $30,000 for future costs and expenses is, therefore, unreasonable. Accordingly, the Court believes an award of $100,000.00 for costs and expenses will sufficiently cover all documented and future costs and expenses.

D.     *Incentive Awards*

The parties have agreed to pay $500 per Representative Plaintiff and $250 per Named Plaintiff in this class action. "The Sixth Circuit has held that incentive awards to class

representatives may be appropriate in some cases, but has not defined the circumstances justifying incentive awards." *Lonardo*, 2010 WL 1416698 at *16 (citing *Hadix v. Johnson*, 322 F.3d 895, 898 (6th Cir. 2003)). District courts in this circuit have looked at the following factors in determining whether to approve incentive awards for class representatives:

> (1) the action taken by the Class Representatives to protect the interests of Class Members and others and whether these actions resulted in a substantial benefit to Class Members; (2) whether the Class Representatives assumed substantial direct and indirect financial risk; and (3) the amount of time and effort spent by the class Representatives in pursuing the litigation.

*Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991).

The Court notes that no objections were made as to the request for incentive awards. In addition, the incentive awards do not diminish class recovery and are relatively small awards. Countrywide has already agreed to pay these awards. Several of the named and representative plaintiffs in this matter expended substantial effort in pursuit of their claims, both before and after this case was transferred to this Court. These efforts have resulted in the class settlement which is now before the Court. Therefore, the Court finds that these awards are appropriate.

## CONCLUSION

For the foregoing reasons, and pursuant to Federal Rule of Civil Procedure 23, the Court finds that the Settlement Agreement entered into by the parties is fair, reasonable, and adequate. The Court will grant Representative Plaintiffs' Motion for Final Approval of Class Action Settlement and direct the payment of fees, expenses, costs, and awards by separate order consistent, and entered concurrently, with this Memorandum Opinion.